JUNE 2, 1802.

# Wm. Bard *v.* George Grundy's Devisees.

*Upon an appeal from a decree of the Court of Quarter Sessions of
Nelson county.*

Where a patent purports to grant the fee, and the patentee sells and under-
takes to convey "*according to the tenure of his patent*"—*Held:* That he was
bound to convey in fee with covenant of general warranty.

The material questions arising in this case are:

1st. How far shall the conduct and agreement of John Grundy
influence the decision?

2d. What kind of conveyance is the appellant bound to make,
whether with general or special warranty?

As to the first, it is contended that John Grundy acted in capa-
city of executor to his deceased father, and as agent or trustee to
the complainants in the court below, and, therefore, his acts are
obligatory on them.   The court, on examining the agreement
entered into between the appellant and John Grundy, are of opin-
ion that the said Grundy acted in his individual character, and
not as executor, agent, or trustee; therefore, his conduct or agree-
ment can have no influence in this decision; but were it otherwise,
it is not shown that his conduct has been fraudulent to the appel-
lant, and should it turn out so, he will be left to pursue his remedy
on the agreement.

As to the second point, the principles determined in the case of
*Steele* against *Mitchell*, in this court, will apply with equal if not

greater force in this case, and must be decisive, unless the postscript to the bond shall produce a difference. No notice is taken of the postscript in either the bill, answer, or depositions; nor is it signed by either of the parties; but as the bond is to be presumed always to have remained in the obligee's possession, or that of his representatives, the postscript will then be considered as having been placed on the bond by consent, and as being incorporated with it. What is its legal import? In every point of view in which the court can consider the postscript, no certain legal construction can be placed on it to vary the intent and meaning of the parties in other parts of the bond. If it was intended to control, restrain, or explain any preceding expression, the wording of it is so obscure or defective as by no legal intendment can it produce that effect. The word *tenure*, in its technical sense, is the manner whereby lands or tenements are holden, or the service that the tenant owes to his lord, and there can be no tenure without some *service*, because the service makes the *tenure*. Again, *tenure* signifies the estate in the land. It will be unnecessary to state the different kinds of tenure by which lands were formerly held in England, they having been abolished. The most common tenure by which lands are held in this country is "fee simple," which is an absolute tenure of land to a man and his heirs forever, without rendering *service* of any kind; therefore, the expression of "*according to the tenure of his patent*," if it has any meaning, must be that he was to hold it free from any kind of service, as Bard, by his patent, held it by that tenure.

Therefore, it is considered by the court, that the decree aforesaid be affirmed, that the appellees may proceed to have the benefit thereof in the court below, and recover of the appellant their costs in this behalf expended; which is ordered to be certified to the said court.